## SHAW BROTHERS v. NEILL McNEILL.

*Issues—Draft—Waiver—Protest.*

1. Where a material issue is raised by the answer, although the matter is not alleged in the complaint, it is not error to submit an issue on it.

2. A promise or a partial payment by an endorser of a bill of exchange, after he has been released from liability by the neglect of the holder to notify him of its dishonor, to pay the whole, or even a part, of the sum named in the bill, if made with a full knowledge that he has been released by such neglect, will operate as a waiver, and bind him to the payment of the whole sum named in the bill.

3. Protest is not necessary to fix the drawee and endorsers of inland bills of exchange with liability, although it is necessary in the case of foreign bills.

4. Even in foreign bills, the protest may be waived, and when this is done, it also waives presentment and notice.

5. Although protest is not necessary on an inland bill, yet its waiver in such case, is construed to signify as much as when applied to foreign bills.

6. So, where protest was waived on an inland bill, and no notice was given of its non-acceptance and non-payment to the endorsers; *It was held,* that such notice was waived by the waiver of protest, and the endorsers were liable.

(*Hubbard* v. *Troy,* 2 Ired., 134, cited and approved.)

This was a CIVIL ACTION, tried before *Boykin, Judge,* and a jury, at January Term, 1886, of the Superior Court of ROBESON County, on an appeal from a justice of the peace.

The complaint of plaintiff was as follows, to-wit:

That the defendant is indebted to him in the sum of $90.00, due by defendant's endorsement of a draft by E. L. McCormac to N. McNeill, which is in the following words and figures, viz:

$90.00　　　　　　　　SHOE HEEL, N. C., Dec. 16, 1884.

No Protest. { At sight, pay to the order of Neill McNeill, Esq., ninety dollars, value received, and charge the same to account of

　　　　　　　　　　　　　　　E. L. McCORMAC.

To Messrs. Kerchner & Calder Bros., Wilmington, N. C.

With the endorsement:

"Pay to the order of Shaw Bros.    NEILL MCNEILL."

The defendant denies that he was indebted to the plaintiff as claimed; denies that payment was demanded of and refused by the drawee; and pleaded further, that if said draft was not paid, that reasonable notice of its non-acceptance and non-payment was not given to him by the drawees, the present plaintiffs, or their agents.

The plaintiffs offer evidence to show that they were pur-chasers of the draft from McNeill, the payee, for value; that he endorsed the same to them; that the draft was presented to Kerchner & Calder Bros., about the 2d or 3d of January, 1885, and payment was refused; that about the same time in 1885, verbal notice was given to McNeill of the fact of the non-payment of the draft by Kerchner & Calder Bros., at which time the defendant said to plaintiff that he would lose some money on account of the transaction, and asked him what he would take for it.   Plaintiff replied that rather than go into a lawsuit, he would take sixty dollars, which the defendant agreed to give, but did not do it.

There were several issues submitted to the jury, and one the series numbered 3, was: "Did the plaintiffs exercise ordi-nary care in the collection of said draft?"

The defendant asked his Honor to charge the jury, that on the whole evidence the plaintiffs were not entitled to recover, for if payment of the draft was refused, they had not notified defendant of it in a reasonable time.   This instruction his Honor declined to give, and charged the jury as follows: "That it was incumbent on plaintiffs to notify defendant that the draft had been presented and payment refused, but that if the defendant had waived this right, they need not con-sider it.   That in determining whether or not the defendant had waived it, they might consider the words "no protest" on the margin of draft, his language and conduct when Shaw informed him about the non-payment in February, and also

his offer to pay $60.00.    That if defendant had offered to pay $60.00, as alleged by Shaw, it amounted to a waiver."

The jury found all the issues for the plaintiffs.    Defendant moved for a new trial, alleging as error:

1. The submission of the third issue, which was not raised by the pleadings, was irrelevant and improper.

2. Refusal to charge the jury as requested by defendant.

3. For error in the charge as given as to waiver of notice, in charging the jury that they might consider the words " No protest" on the draft; the language and conduct of defendant in February, and his offer to pay $60.00, when there was no evidence that he ever waived or intended to waive notice, and that the evidence only tended to prove that the offer of $60.00 was an offer of compromise, accepted by plaintiffs, and their action, if any they had, should have been for the $60.00.

There was a judgment for the plaintiffs, and the defendant appealed.

*Mr. Thos. H. Sutton*, for the plaintiffs.
*Mr. C. C. Lyon*, for the defendant.

ASHE, J., (after stating the facts).    The defendant took three exceptions on the trial of this case, none of which are tenable.

First. For that the third issue submitted to the jury was not raised by the pleading.

But it will be seen by reference to the answer of the defendant, that the question of diligence involved in the issue, was expressly raised in the answer, by pleading that reasonable notice of the acceptance and non-payment of the draft had not been given by the plaintiffs to the defendant.

Secondly. For that his Honor refused to give the charges as requested by the defendant, which was in substance, that the plaintiffs had not notified the defendant in a reasonable

time that the drawee had refused the payment of the draft. There was no error in this, for the reason, as we will hereafter show, that the defendant had waived the necessity of notice.

Thirdly. For that his Honor charged the jury that they might consider the words "No protest" on the draft, and the language and conduct of defendant when he was informed by the plaintiff of the non-payment, and the offer to pay $60.00; and that if the defendant had offered to pay $60.00 as alleged by Shaw, it amounts to a waiver.

We find no such error in the charge as entitles the defendant to a new trial. There is some fluctuation in the decisions of the courts upon the question, how far a promise to pay a part of a draft is a waiver of demand and notice of non-payment. For instance, it has been held by some of the authorities, that when the promise is only as to part of the sum, it is only a waiver *pro tanto*, and the plaintiff could only recover that amount. *Fletcher* v. *Froggart*, 2 Car. & P., 569, (12 E. C. L. R.) On the other hand, it has been held, that "a promise to pay generally, or a *promise to pay a part*, or a part payment made, with a full knowledge that he has been fully released from liability on the bill by the neglect of the holder, will operate as a waiver, and bind the party who makes it for the payment of the whole bill." *Dixon* v. *Elliot*, 5 Car. & P., 437; *Margetson* v. *Aitkin*, 3 Car. & P., 388; *Harvey* v. *Troupe*, 23 Miss., 538. So it would seem, that the weight of the authorities supported the charge of the Judge in this particular.

But aside from this, his Honor, in his charge to the jury, told them they might consider the words "No protest," written on the margin of the draft, as evidence of a waiver of notice of presentment and non-payment. The words "No protest" written on the margin of this draft, must have been put there with an object, and we can conceive of none other than to dispense with the notice of presentment and refusal to pay, otherwise it is unmeaning.

It is well settled, that protest being a part of the custom of merchants which is essential in foreign bills to fix the drawee and indorsers with liability, is not necessary for such a purpose in inland bills. *Hubbard* v. *Troy*, 2 Ired., 134; 1 Parson's on Notes and Bills, 643. But even in foreign bills the protest may be waived. There the words, "I waive protest," or "waiving protest," or any similar words, infer that the protest is waived, and when applied to foreign bills, was universally regarded as expressly waiving presentment and notice, the protest being, according to the law-merchant, the formal and necessary evidence of the dishonor of such an instrument. In waiving "protest," the party is considered not only as dispensing with a formality, but as dispensing with the necessity of the steps which must precede it, and of which it is merely the formal, though necessary, proof of what the law required. 2 Daniel on Neg. Ins., §1095. But when the waiver of protest is applied to inland bills, the protest having no application to such instruments, there is a diversity of opinion in the Courts and text books, whether such a waiver would have the effect of dispensing with notice in an action upon an inland bill. But the better opinion is, that as the word "protest" has by general usage a well known signification, and wherever it is used, it is supposed to mean something more than the formal declarations of a notary. Hence, Mr. Daniel, who is very high authority on the subject, says, "the weight, as well as the number of authorities, predominates in favor of construing a waiver of "protest" to signify as much when applied to inland bills and notes, as when used in respect to a foreign bill."

"Inland bills and promissory notes may be protested, by statuary enactments, in many States, and the protest is accorded the same effect as to them, when it is made, though it is not necessary to make it, and the weight, as well as the number of authorities, predominate in favor of construing a waiver of protest to signify as much when applied to

inland bills and notes, as when used in respect to a foreign bill." Ibid., and the cases cited in Note 2.

The doctrine there laid down, must then apply to this bill, for we have a statute which provides that when it may be necessary to prove a demand upon, or notice to the drawer or indorser of a bill of exchange, or a promissory note, or other negotiable security, the protest taken before a proper officer shall be *prima facie* evidence that such demand was made, or notice given, in the manner set forth in the protest. *The Code,* §49.

Our conclusion is, there was no error. The judgment of the Superior Court is therefore affirmed.

No error.                                                    Affirmed.